934 So.2d 84 (2006)
Mona ROBERTS
v.
THIBODAUX HEALTHCARE CENTER.
No. 2005 CA 0774.
Court of Appeal of Louisiana, First Circuit.
March 24, 2006.
*86 Russell B. Ramsey, New Orleans, for PlaintiffAppellee Mona Roberts.
H. Carter Marshall, Kevin R. Tully, New Orleans, for DefendantsAppellants Thibodaux Healthcare Center and Employers Insurance of Wausau.
Before WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
In this workers' compensation dispute concerning an alleged pre-existing back condition, the employer/defendant, Thibodaux Healthcare Center, and its insurer, Employer's Insurance of Wausau (collectively referred to as "Thibodaux Healthcare"), appeal a judgment rendered in *87 favor of the employee/plaintiff, Mona Roberts, which among other things, awarded her workers' compensation benefits, penalties, and attorney fees. Finding no error in the judgment rendered by the workers' compensation judge ("WCJ"), we affirm.

I. FACTUAL AND PROCEDURAL HISTORY

A. Plaintiff's Relevant Past Medical History
On October 16, 1997, Dr. Donald J. Judice,[1] a neurosurgeon, performed a surgical anterior cervical discectomy and fusion at C4-5 and C5-6 on Ms. Roberts' cervical spine. At a routine follow-up visit on January 22, 1998, in Dr. Judice's absence, Ms. Roberts saw Dr. H. Carson McKowen, another neurosurgeon. She subsequently returned to Dr. McKowen on March 23, 1998, for another follow-up visit, and reported that she was having increased neck pain, headaches and "back pain radiating down the right leg with some left leg pain." Dr. McKowen noted that he found no "neurological deficit in the lower extremities, but it [was] worth checking into" and therefore, he ordered a CT scan of both the cervical and lumbar spine. The CT scan was performed on March 26, 1998, and with regard to the lumbar spine, it revealed:
AT L4-5, THERE IS A SMALL LEFT POSTERIOR DISC BULGE INTO THE INFERIOR ASPECT OF THE LEFT NEURAL FORAMEN. THIS IS SEEN TO CURVE BELOW THE LEVEL OF THE EXIT OF THE NERVE ROOT AND DOES NOT APPEAR TO COME IN CONTACT WITH THE NERVE ROOT ITSELF. EPIDURAL FAT REMAINS PRESENT WITHIN THE FORAMEN. THERE MAY BE MILD ENCROACHMENT UPON THE LEFT LATERAL RECESS AT THIS LEVEL. ... IMP: SMALL FOCAL LEFT POSTEROLATERAL DISC BULGE INTO THE LEFT NEURAL FORAMEN AT L4-5. THIS IS OF UNCERTAIN CLINICAL SIGNIFICANCE.
After Dr. McKowen reviewed the results of Ms. Roberts' CT scan and at another follow-up visit with Ms. Roberts, Dr. McKowen noted: "[t]he lumbar CT scan shows a lateral disc protrusion at L4-5 but not too badly. I don't recommend surgery for any of this. I told her the usual treatment would be anti-inflammatory medications, muscle relaxants and physical therapy. We are going to try therapy 3 times a week for 3 weeks for both the cervical and lumbar radiculopathy." (Emphasis added).
Thereafter, Ms. Roberts went to Thibodaux Physical Therapy for treatment on April 7, 1998. Her initial evaluation record, dated April 9, 1998, indicated that Ms. Roberts' diagnosis was cervical and lumbar radiculopathy and that Ms. Roberts had complained of "insidious onset of cervical and lumbar discomfort." However, Ms. Roberts' subsequent discharge summary, dated June 24, 1998, noted that Ms. Roberts went to physical therapy three times a week for three weeks (from April 7 through May 6, 1998), and that the area treated was "[c]ervical and shoulder." This record makes no reference to Ms. Roberts receiving physical therapy for her lumbar spine or back.
Thereafter, Ms. Roberts went to Dr. McKowen for follow-up visits on May 11, 1998, May 18, 1998, October 2, 1998, October 19, 1998, January 25, 1999, February 1, 1999, September 3, 1999 and September 13, 1999. During this time period, Ms. *88 Roberts never complained to Dr. McKowen that she was having back pain, with the exception on September 3, 1999, wherein Dr. McKowen noted: "Ms. Roberts returns continuing to have quite a bit of neck pain and pain into the arm. . . . In addition, she has lower back pain with pain down the left leg but the neck is much worse." Thereafter, on December 17, 1999, Ms. Roberts sought treatment with another neurosurgeon, Dr. Stefan G. Pribil.
According to Dr. Pribil's records, Ms. Roberts' main complaints were for neck pain and headaches, but also reported "mild low back pain." His office notes reflect that he reviewed the March 26, 1998 CT scan of the lumbar spine, which showed a "disc herniation at L4-5 on the left." On January 31, 2000, Dr. Pribil performed another surgical cervical fusion on Ms. Roberts. Ms. Roberts was under Dr. Pribil's continuous treatment from December 17, 1999 through October 5, 2000, when she was discharged. Ms. Roberts saw Dr. Pribil approximately one year later for follow-up visits on October 25, 2001 and November 6, 2001. During this entire time period, Dr. Pribil's records do not reflect that Ms. Roberts ever complained of back pain, with the exception of the initial visit on December 17, 1999.

B. Plaintiff's Present Medical Condition
On April 3, 2003, Ms. Roberts, while in the course and scope of her employment as a dietary aide with Thibodaux Healthcare Center, was allegedly injured as the result of an accident when she pushed on a carton of liquid eggs while she was in a stooped position, and experienced pain in her back. Upon standing, Ms. Roberts experienced pain radiating into both of her legs. Ms. Roberts immediately reported the incident to her supervisor, Connie Bellow. That same day, Ms. Roberts sought treatment with her family physician, Dr. Jody M. Plaisance. Dr. Plaisance gave Ms. Roberts an injection and ordered an MRI of her lumbar spine. The MRI, performed on April 8, 2003, revealed "a central and left-sided disc protrusion at [L4-5] causing moderately severe mass effect upon the left aspect of the thecal sac and severe encroachment upon the medial aspect of the left neural foramen." Thereafter, Dr. Plaisance referred Ms. Roberts to Dr. Thomas R. Donner, a neurosurgeon, for treatment.
At the outset, Dr. Donner treated Ms. Roberts conservatively with medication and physical therapy, but when her symptoms and pain became considerably worse, he recommended a "minimally invasive L4-5 discectomy." In response to Dr. Donner's recommendation for surgery, Thibodaux Healthcare inquired as to whether Dr. Donner would consider acupuncture as an alternative form of treatment for Ms. Roberts.
Thereafter, Thibodaux Healthcare sent Ms. Roberts to another neurosurgeon, Dr. Pribil, for a second medical opinion. After seeing Ms. Roberts in his office on June 3, 2003, Dr. Pribil diagnosed Ms. Roberts with a lumbar disc herniation at L4-5 on the left, and he opined that "surgery by Dr. Donner ... appears to be a reasonable method of treatment." However, he further stated Ms. Roberts "may respond poorly to just a simple microdiscectomy" and that a "[surgical] fusion might need to be entertained."
Upon learning that Ms. Roberts was a former patient of Dr. Pribil's and after obtaining and reviewing Dr. Pribil's past medical records for Ms. Roberts, Thibodaux Healthcare terminated Ms. Roberts' workers' compensation and medical benefits and also refused to authorize the surgery recommended by Dr. Donner. On August 14, 2003, Dr. Donner sent a letter *89 to Thibodaux Healthcare, on behalf of Ms. Roberts, stating:
It has come to my attention that the Mona Roberts case has been questionably related to an old problem that she had in her lumbar spine treated by Dr. McKowen in 1998. The patient at that time complained of lower back pain with primary radiation into the right leg and was found on radiographic workup to have a minor disc protrusion at this level. More recently, the problem that I have treated her for is for left sided leg pain with an obvious compression of the left L5 nerve root from a sizeable disc protrusion here. It appears that the latter is a new lesion, which was not clearly present on the patient's prior workup and should be covered under the patient's current workers' compensation claim.
Nevertheless, Thibodaux Healthcare continued to deny Ms. Roberts' workers' compensation and medical benefits and refused to authorize the recommended surgery.
In November 2003, Dr. Donner discharged Ms. Roberts from his care due to Thibodaux Healthcare's refusal to approve his recommendations for her care (i.e., the surgical L4-5 discectomy). In the letter discharging Ms. Roberts from his care, Dr. Donner informed Ms. Roberts that "[y]our symptoms now have been present for many, many months and the longer they go untreated, the worse your prognosis ultimately becomes. ... Once again, I would like to stress the fact that further delays in the management of your lumbar disc herniation place you at a high risk of developing sequelae."[2]
Thereafter, on June 15, 2004, Ms. Roberts went to Dr. Christopher E. Cenac, an orthopedic surgeon, who was Thibodaux Healthcare's choice of physician (and expert witness in this matter). Dr. Cenac concurred with the interpretation of the March 26, 1998 CT scan that the "left lateral disc protrusion ... at L4/5 . . . [was] of uncertain clinical significance." However, he believed that because Ms. Roberts' physical complaints were inconsistent with diagnostic test results, he did not recommend surgery at that time, but rather, recommended further testing to determine whether Ms. Roberts had "the normal progression of a prior asymptomatic condition at L4/5 and/or an aggravation of that condition causally related to the 4/3/03 incident." Thereafter, upon review of the result of the April 8, 2003 MRI of Ms. Roberts, Dr. Cenac concurred with the radiographic diagnosis that "[t]he patient does have a left eccentric disc herniation with nerve root impingement at L4/5," but opined that "there is a high probability that the finding noted on the recent [MRI] is pre-existing."
When Dr. Donner, Ms. Roberts' treating physician for this injury, was consulted regarding the results of Ms. Roberts' March 26, 1998 CT scan and its relationship to the present injury, as evidenced by the April 8, 2003 MRI, Dr. Donner stated that while
very minor disc pathology [was] noted at L4-5 ... it is clear to me that [Ms. Roberts] had a new L4-5 disc herniation from the lifting incident which immediately preceded her 04/11/2003 visit with me. . . . I suppose in some very loose way it could [be related to her 1998 injury] but at that time [Ms. Roberts] had only very minor disc pathology demonstrated *90 and no symptoms obviously referable immediately to it. Given this, I have to stick with my opinion that [Ms. Roberts'] symptoms were more causally related to new herniation of the disc in early 2003 rather than related to a remote problem in 1998, although admittedly, that incident could have played a very minor role in the history of [Ms. Roberts'] problems.

C. Procedural History of this Action
On September 30, 2003, shortly after Thibodaux Healthcare terminated Ms. Roberts' workers' compensation and medical benefits and refused to authorize surgery, Ms. Roberts instituted these proceedings for her benefits and specifically requested that she be allowed to have the back surgery recommended by Dr. Donner. Thibodaux Healthcare answered, essentially denying that Ms. Roberts sustained an injury on April 3, 2003, and denying that she was performing service in the course and scope of her employment at the time of her alleged injury. However, Thibodaux Healthcare did admit that Ms. Roberts was an employee at the time of the alleged injury on April 3, 2003, and that she had been paid compensation benefits in the amount of $83.67 per week from April 4, 2003, through September 30, 2003.[3] Thibodaux Healthcare further contended that Ms. Roberts had received all benefits to which she was entitled, asserted a right to reduction of benefits, and denied that it had acted in an arbitrary and capricious manner at any time in this matter.
On March 3, 2004, Thibodaux Healthcare filed a reconventional demand alleging that Ms. Roberts violated La. R.S. 23:1208 by willfully making false statements or representations to obtain workers' compensation benefits and, therefore, had forfeited her right to receive workers' compensation benefits.[4] Additionally, Thibodaux Healthcare sought an order compelling Ms. Roberts to attend a medical examination with its choice of physician, Dr. Cenac, which the WCJ granted notwithstanding that Thibodaux Healthcare had previously chosen Dr. Pribil for the second medical opinion.[5]
On October 1, 2004, a trial on the merits was held. After the introduction of evidence and receipt of post-trial memoranda, the WCJ took the matter under advisement. On January 21, 2005, the WCJ rendered and signed judgment as follows: (1) finding Ms. Roberts suffered an accident on April 3, 2003, within the definitions established by the Workers' Compensation Act; (2) finding Ms. Roberts was injured as the result of an accident while in the course of and arising out of her employment with the Thibodaux Healthcare Center; (3) finding Ms. Roberts suffered an aggravation of a pre-existing back condition; (4) finding Ms. Roberts did not violate La. R.S. 23:1208; (5) finding Ms. Roberts was entitled to workers' compensation indemnity benefits and the reinstatement of indemnity benefits from the last date those benefits were received by her; (6) ordering Ms. Roberts be paid a workers' compensation rate of $83.67 per week pursuant to La. R.S. 23:1202(A)(2) and pursuant *91 to a joint stipulation by the parties; (7) finding Ms. Roberts was entitled to all reasonable and necessary medical treatment; (8) ordering Thibodaux Healthcare to pay for all past medical treatment incurred by Ms. Roberts related to or as a consequence of the accident of April 3, 2003; and (9) assessing Thibodaux Healthcare penalties in the amount of $1,000.00 and attorney fees in the amount of $5,000.00.
It is from this judgment that Thibodaux Healthcare now appeals.

II. ASSIGNMENTS OF ERROR
On appeal, Thibodaux Healthcare asserts that: (1) the WCJ erred in finding that Ms. Roberts had carried her burden of proving that she suffered an aggravation of a pre-existing back condition on April 3, 2003; (2) the evidence was insufficient to show that surgery for her herniated disc was warranted; (3) the WCJ erred and abused her discretion in awarding penalties and attorney fees.

III. STANDARD OF REVIEW
In a workers' compensation case, whether a claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Authement v. Wal-Mart, 2002-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564, 570. Additionally, whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is likewise a factual question. Crochet v. Barbera Chevy-Chrysler Co., Inc., XXXX-XXXX (La. App. 1st Cir.6/29/05), 917 So.2d 49, 53. Appellate review of the factual findings in workers' compensation cases is governed by the manifest error or clearly wrong standard. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 380.
The two-part test for appellate review of facts is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court, and (2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, an appellate court may not set aside a trial court's factual findings unless, reviewing the record in its entirety, it determines the trial court's factual finding was clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Lizana v. Gulf Coast Pain Institute, XXXX-XXXX (La.App. 1st Cir.5/14/04), 879 So.2d 763, 765. If the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106, 1112 (La.1990). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in the demeanor and tone that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).

IV. LAW AND DISCUSSION

A. Causation
The Workers' Compensation Act ("the Act") provides coverage to an employee *92 for personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme as adopted by the legislature. Harrison v. Baldwin Motors, 2003-2682 (La.App. 1st Cir.11/3/04), 889 So.2d 313, 316, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 609. He must establish that the accident was work-related, the accident caused the injury, and the injury caused the disability. Id.
Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Grant v. Assumption Parish School Bd., XXXX-XXXX (La. App. 1st Cir.3/28/02), 813 So.2d 622, 624. "Accident" is statutorily defined in the Act as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). Next, the claimant must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. Harrison, 889 So.2d at 316.
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Id. Barring circumstances that cast suspicion on the reliability of the worker's uncontradicted testimony, the WCJ should accept the testimony as true when determining whether the worker has discharged his burden. Brown v. Kwok Wong, 2001-2525 (La.App. 1st Cir.12/20/02), 836 So.2d 315, 319. Whether a claimant has carried his or her burden of proof and whether the claimant's testimony is credible are questions of fact to be determined by the WCJ. Bruno, 593 So.2d at 361.
When an employee suffered from a pre-existing medical condition, he may still prevail if he proves that the accident aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691, citing Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320, 324 (La.1985). In Walton, the Louisiana Supreme Court recognized the existence of a presumption to aid plaintiffs in cases involving a pre-existing condition, wherein it stated:
[W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.
Walton, 475 So.2d at 324-325.
Once the employee has established the presumption of causation, the opposing party bears the burden of producing *93 evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Peveto, 630 So.2d at 691. Medical testimony, albeit significant, is not conclusive as to the issue of causation, which is generally the ultimate fact to be decided by the court after weighing all the evidence. See Haughton v. Fireman's Fund American Ins. Co., 355 So.2d 927, 928-929 (La.1978).
In this case, the issue before us is whether the WCJ erred in finding that Ms. Roberts met her burden of proving that she sustained a work-related accident that caused and/or aggravated her back problems, thus warranting the award of workers' compensation and medical benefits, including the surgical procedure recommended by Dr. Donner. We find the record before us is devoid of any evidence casting serious doubt upon Ms. Roberts' version of the incident on April 3, 2003. Furthermore, Ms. Roberts' testimony regarding the accident and injury was corroborated by the circumstances following the incident, in that Ms. Roberts reported the accident and injury to her supervisor, who prepared an accident report, she immediately sought medical treatment with Dr. Plaisance, and the MRI of Ms. Roberts' back, administered within days of the accident, indicated an L4-5 disc herniation. Thus, Ms. Roberts' testimony concerning the occurrence of the accident itself and the resulting injury was entitled to great weight, and we conclude that the WCJ was not clearly wrong in determining that an accident occurred which caused and/or aggravated Ms. Roberts' resulting back problems.
Nevertheless, Thibodaux Healthcare contends that Ms. Roberts' back problems are attributable solely to her documented pre-existing degenerative back condition, for which she had sought treatment and physical therapy, as opposed to an aggravation of a pre-existing or a new injury. However, the WCJ made a factual determination concerning Ms. Roberts' pre-accident medical history, that before the accident, she had not manifested disabling lower back symptoms and, further, that commencing with the accident the disabling lower back symptoms appeared and manifested themselves thereafter. Furthermore, the medical opinion of Ms. Roberts' treating physician, indicated that not only is there medical evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling back condition, but further, that the accident on April 3, 2003 created a new L4-5 disc herniation. See Walton, 475 So.2d at 324-325.
Although Dr. Cenac believed that there was a "high probability" that the findings on Ms. Roberts' April 8, 2003 MRI were the normal progression of a prior asymptomatic pre-existing condition at L4-5 as opposed to an aggravation of that condition causally related to the April 3, 2003 incident, the WCJ clearly chose to give more deference to the opinion of Dr. Donner. Thereafter, the WCJ concluded that there was an accident on April 3, 2003, which caused an aggravation of Ms. Roberts' pre-existing condition, and therefore, awarded Ms. Roberts' workers' compensation and medical benefits, including ordering the surgical procedure recommended by Dr. Donner. As the WCJ was presented with two permissible opposing medical views on the issue of causation and the necessary treatment for Ms. Roberts' injury, her choice between them cannot be manifestly erroneous.
Based on the record before us, we find that there was a reasonable basis for the WCJ to find the testimony of Ms. Roberts *94 was reliable and that both the medical evidence presented and the events following Ms. Roberts' injury corroborated Ms. Roberts' claim of a work-related accident. Additionally, we find that a reasonable factual basis existed for the WCJ's finding that Ms. Roberts met her burden of proving by a preponderance of the evidence that Ms. Roberts' work-related accident caused an aggravation of her back condition, and therefore an award of workers' compensation and medical benefits, including surgery, was warranted. Furthermore, our review of the record establishes that the WCJ was not clearly wrong.

B. Penalties and Attorney Fees
Thibodaux Healthcare argues that because it discontinued payment of benefits, as opposed to failing to timely pay benefits, the WCJ erred in assessing it with penalties. Thibodaux Healthcare further contends that it was not arbitrary in discontinuing Ms. Roberts' benefits, and therefore, the assessment of attorney fees was likewise erroneous.
In this case, the January 21, 2005 judgment awarded penalties and attorney fees as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Thibodaux Healthcare Center, is assessed penalties in the amount of $1000.00 as well as $5000.00 in attorney fees.
At the pertinent time herein, two statutory provisions provided for the award of penalties and/or attorney fees in workers' compensation casesLa. R.S. 23:1201(F) and La. R.S. 23:1201.2.[6] Louisiana Revised Statute 23:1201 provided, in pertinent part, as follows:
A. Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident . . .
* * *
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical *95 benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
* * *
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Additionally, La. R.S. 23:1201.2 provided, in pertinent part, as follows:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
Thus, during the pertinent time period in this case, the applicable statutory authority for assessing an employer with penalties and attorney fees depended on whether the employer failed to commence payment of benefits in a timely fashion or discontinued benefits that had been timely paid. Authement v. Wal-Mart, 857 So.2d at 573. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 45, the Louisiana Supreme Court noted that both penalties and attorney fees were recoverable under La. R.S. 23:1201(F) if the employer or insurer failed to commence payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely, unless the claim was reasonably controverted; however, only attorney fees were recoverable under La. R.S. 23:1201.2 if the employer or insurer arbitrarily discontinued payment of benefits due.[7]Authement v. Wal-Mart, 857 So.2d at 573; see also Cooper v. St. Tammany Parish School Board, 2002-2433 (La.App. 1st Cir.11/7/03), 862 So.2d 1001, 1009, writ denied, XXXX-XXXX (La.4/23/04), 870 So.2d 300.
In this case, Thibodaux Healthcare initially commenced paying Ms. Roberts' workers' compensation and medical benefits timely, as required by La. R.S. 23:1201, and therefore, only attorney fees could be recoverable under La. R.S. 23:1201.2 if Thibodaux Healthcare arbitrarily discontinued payment such benefits. However, La. R.S. 23:1203(A) provides that the employer is obligated to "furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." Thus, a failure to authorize a treatment, including a surgical treatment, can be considered a failure to furnish treatment resulting in the imposition of penalties and attorney fees under La. R.S. 23:1201(F), unless the claim is reasonably controverted. Authement v. Shappert Engineering, XXXX-XXXX (La.2/25/03), 840 So.2d 1181, 1187. Accordingly, in this case, penalties and attorney fees can be awarded in favor of Ms. Roberts under La. R.S. 23:1201(F) due to Thibodaux Healthcare's refusal to authorize the surgical procedure recommended by Dr. Donner, provided the claim was not reasonably controverted. A claim is reasonably controverted if the employer has sufficient factual and medical information to counter that presented by the claimant. Hutchison v. Aldworth Co., Inc., XXXX-XXXX (La.App. 4th Cir.11/10/04), *96 888 So.2d 1052, 1059, writ denied, XXXX-XXXX (La.2/18/05), 896 So.2d 38.
Based on the record before us, we find a reasonable factual basis existed for the WCJ to find that, when Thibodaux Healthcare refused to authorize the surgery recommended by Ms. Roberts' treating physician, Dr. Donner, it did not have sufficient factual and medical information to counter that presented by Ms. Roberts and Dr. Donner, and to conclude that the claim for surgical treatment was not causally related to the accident. When Dr. Donner recommended surgery, Thibodaux Healthcare's initial response was to request Dr. Donner consider acupuncture as an alternative to surgery. Thereafter, Thibodaux Healthcare obtained a second medical opinion by Dr. Pribil, who not only acknowledged that the surgical procedure recommended by Dr. Donner was appropriate, but further suggested Ms. Roberts might need a more complex surgical procedure. Thibodaux Healthcare also ignored a subsequent letter indicating that not only was the surgery necessary, but that a delay in Ms. Roberts' treatment in this regard would make her prognosis worse and place her at risk for developing other medical problems. Even Dr. Cenac, who saw Ms. Roberts well over a year after Dr. Donner recommended surgery, never stated that the surgery was not necessary, but rather, merely opined that he would not recommend the surgery until further testing could be performed on Ms. Roberts.
Thibodaux Healthcare contends that it based its decision to refuse to authorize the surgery (and to terminate Ms. Roberts' workers' compensation and medical benefits) on Ms. Roberts' past medical records, which allegedly revealed a past medical history of back problems. However, there is no evidence in this record that Thibodaux Healthcare ever obtained any medical evidence to counter the opinion of Dr. Donner (set forth in his August 14, 2003 letter) which clearly indicated that, notwithstanding the minor disc protrusion at L4-5 noted on the March 26, 1998 CT scan and the reported complaint on of lower back pain (with primary radiation into the right leg), his present treatment of Ms. Roberts (and for which he was recommending the surgical procedure) was "for left sided leg pain with an obvious compression of the left L5 nerve root from a sizeable disc protrusion." (Emphasis added). Therefore, Ms. Roberts' claim for the surgery recommended by Dr. Donner was not reasonably controverted, and Thibodaux Healthcare's failure or refusal to authorize the surgery recommended by Dr. Donner equated to a failure to provide benefits, under La. R.S. 23:1201(F), thus triggering the imposition of penalties and attorney fees.
Moreover, as noted hereinabove, La. R.S. 23:1201.2 provided for an award of attorney fees when an employer or insurer arbitrarily, capriciously, or without probable cause discontinued benefits. The purpose of this penal statute is to discourage indifference and undesirable conduct by employers and insurers. Williams, 737 So.2d at 46; Canizaro v. Tangipahoa Parish School System, XXXX-XXXX (La.App. 1st Cir.8/20/03), 853 So.2d 741, 744. For purposes of imposition of attorney fees for discontinuance of workers' compensation benefits, "arbitrary and capricious behavior" consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Williams, 737 So.2d at 45-46. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Williams, 737 So.2d at 46. The crucial inquiry is whether the employer *97 had articulable and objective reasons for denying or discontinuing the benefits at the time it took that action. Id.; Authement v. Wal-Mart, 857 So.2d at 574.
Based on the record before us, we find a reasonable factual basis existed for the WCJ to find that Thibodaux Healthcare had no reasonable basis to believe that benefits were not due to Ms. Roberts and that its decision to discontinue benefits was a willful and unreasonable action, without consideration and regard for the facts and circumstances of Ms. Roberts' condition. Thibodaux Healthcare's decision to discontinue or terminate Ms. Roberts' workers' compensation and medical benefits was primarily based on Ms. Roberts' past medical records revealing her prior back problems and Thibodaux Healthcare's resulting erroneous conclusion that Ms. Roberts had concealed this information, and therefore, was guilty of fraud in violation of La. R.S. 23:1208. Thus, for approximately one and one-half years, Ms. Roberts did not receive any workers' compensation benefits because Thibodaux Healthcare concluded that Ms. Roberts committed fraud when an objective inquiry into the matter (i.e., a review of her treating physician's medical records, which included her prior medical records) would have revealed that Ms. Roberts was being treated by Dr. Donner for a new injury and/or an aggravation of a pre-existing condition. Furthermore, Thibodaux Healthcare did not obtain its expert medical opinion that there was a probability that Ms. Roberts' back problems were the normal progression of a degenerative disease as opposed to an aggravation of a pre-existing condition until well over eight months after it terminated Ms. Roberts' benefits.
Therefore, after reviewing the record in its entirety, we find that there was sufficient factual information from which to conclude that Thibodaux Healthcare refused to authorize a necessary medical or surgical treatment, which was not reasonably controverted, and further, that it arbitrarily terminated Ms. Roberts' workers' compensation indemnity and medical benefits. Therefore, there is a reasonable factual basis for the WCJ's conclusion that the assessment of penalties and attorney fees against Thibodaux Healthcare was warranted.[8] Furthermore, our review of the record establishes that the WCJ was not clearly wrong in this regard.

V. CONCLUSION
After a thorough of the record, we find a reasonable basis to support the WCJ's factual determination that Mona Roberts was injured as the result of an accident while in the course of and arising out of her employment with the Thibodaux Healthcare Center, that she suffered an aggravation of a pre-existing back condition which warranted an award of workers' compensation and medical benefits, including the surgical procedure recommended by Dr. Donner, that Thibodaux Healthcare Center refused to authorize a medical or surgical treatment that was not reasonably controverted, and that Thibodaux Healthcare Center arbitrarily terminated Mona Roberts' workers' compensation and medical benefits. Therefore, we find no error in and hereby affirm the January 21, 2005 judgment.
All costs of this appeal are assessed to the defendants/appellants, Thibodaux Healthcare Center, and its insurer, Employer's Insurance of Wausau.
AFFIRMED.
McCLENDON, J., dissents in part and concurs in part and assigns reasons.
*98 McCLENDON, J., concurs in part and dissents in part.
As an appellate court we cannot set aside the trial court's factual findings unless we determine that there is no reasonable factual basis for the findings and the findings are clearly wrong (manifestly erroneous). Stobart v. State, Dep't of Transp. and Dev., 617 So.2d 880, 882 (La. 1993). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Under such circumstances, an appellate court cannot substitute its judgment for that of the trier of fact. Etcher v. Neumann, 00-2282, p. 9 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 835, writ denied, 02-0905 (La.5/31/02), 817 So.2d 105. Accordingly, I concur with the majority's affirmance of the trial court's finding that there was an accident, that claimant was injured as a result of the accident while in the course and scope of her employment with the defendant, that claimant suffered an aggravation of a preexisting back condition, and that claimant is entitled to workers' compensation benefits including all reasonable and necessary medical treatment.
However, I dissent from the majority regarding penalties and attorney fees. Under either a "reasonably controverted" or an "arbitrary and capricious" standard, neither penalties nor attorney fees are warranted in this matter.
The term "reasonably controverted" was discussed in Brown v. Texas La Cartage, Inc., 98-1063, p. 9 (La.12/1/98), 721 So.2d 885, 890, by the Louisiana Supreme Court:
In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.
Thus, in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Brown, 98-1063 at p. 8, 721 So.2d at 890. A failure to reasonably controvert a claim requires action of a less egregious nature than that required for arbitrary and capricious behavior. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. Stated another way, such behavior arises from unrestrained exercise of the will or personal preference or lacks a predictable pattern. Brown, 98-1063 at pp. 8-9, 721 So.2d at 890.
Claimant's medical records revealed a past medical history of back problems, including a disc herniation at the L4-5 level on the left, which was the same location as claimant's injury resulting from the April 3, 2003 accident. Claimant failed to disclose this information, including her testing and treatment, which medical history was later discovered by the defendant.[1] *99 Said past medical history revealed that following complaints of back pain in 1998, claimant underwent a CT scan that established a disc bulge at L4-5. The record also shows that these complaints continued and included a recommendation for physical therapy, none of which claimant reported. Based on these facts, defendant was engaged in a nonfrivolous legal dispute as it possessed medical and factual information to reasonably counter the factual and medical information of claimant. Thus, I believe that the defendant reasonably controverted claimant's request for surgical treatment. Further, based on the facts and circumstances of this matter, defendant clearly was not arbitrary and capricious in discontinuing claimant's benefits.
Therefore, I respectfully concur in part and dissent in part.
NOTES
[1] Dr. Judice is now deceased.
[2] Sequelae, plural for sequela, is medically defined as "a diseased condition following, and usually resulting from a previous disease." See Webster's New World Dictionary, Third College Edition.
[3] Although the record is not clear as to the exact date Ms. Roberts' workers' compensation benefits were terminated, there are references to her benefits being terminated prior to September 30, 2003.
[4] On August 27, 2004, the WCJ denied Thibodaux Healthcare's motion for summary judgment on the issue of the alleged violation of La. R.S. 23:1208 by Ms. Roberts. Thibodaux Healthcare has not assigned error to the WCJ's ruling in this regard in this appeal.
[5] The propriety of the WCJ's ruling in this regard is not before us in this appeal.
[6] On appeal, Ms. Roberts correctly notes that distinction made between La. R.S. 23:1201(F) and La. R.S. 23:1201.2 regarding what sanctions could be assessed against an employer for certain actions has been repealed and rewritten. Specifically, La. R.S. 23:1201(F) was amended and rewritten by 2003 La. Acts, No. 1204, § 1 and La. R.S. 23:1201.2 was repealed by section 2 of that act. However, La. R.S. 23:1201 was further amended by Act 1204 to include subsection I, the present statutory authority for the payment of penalties and attorney fees when an employer or insurer discontinues payment of compensation benefits. As amended and at present, La. R.S. 23:1201(I), provides in pertinent part, as follows:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.
Nevertheless, the workers' compensation penalty provision in effect at the time of the claimant's injury is the provision that applies to the claim for benefits arising out of injury. See Hutchison v. Aldworth Co., Inc., XXXX-XXXX (La.App. 4th Cir.11/10/04), 888 So.2d 1052, 1060, writ denied, XXXX-XXXX (La.2/18/05), 896 So.2d 38. The changes made to La. R.S. 23:1201(F) and 23:1201.2 by 2003 La. Acts, No. 1204 became effective on August 15, 2003. As Ms. Roberts' injury occurred on April 3, 2003, the applicable statutes herein are La. R.S. 23:1201(F) and 23:1201.2, as they existed prior to 2003 La. Acts, No. 1204.
[7] However, we note that presently under La. R.S. 23:1201(I), both penalties and attorney fees are recoverable if the employer or insurer arbitrarily and capriciously discontinues payment of workers' compensation benefits due.
[8] We further find no abuse of discretion in the amount of penalties and attorney fees assessed against Thibodaux Healthcare by the WCJ.
[1] Although the defendant had alleged a violation of LSA-R.S. 23:1208, the workers' compensation judge found that claimant did not willfully make a false statement or representation, stating that claimant was a "poor historian." Defendant has not appealed this finding.