# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 09-208


**VIEL OLIVIER**

**VERSUS**

**OLIVIER BUILDERS**

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 04
PARISH OF LAFAYETTE, NO. 06-3499
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE
**********

## SYLVIA R. COOKS
### JUDGE

**********

Court composed of Sylvia R. Cooks, James T. Genovese, and Shannon J. Gremillion, Judges.

**AFFIRMED IN PART, REVERSED IN PART;
AMENDED IN PART; AND RENDERED.**


Michael B. Miller
P.O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT/APPELLEE:
    Viel Olivier

Mark Ackal
Mark Ackal & Associates
110 East Kaliste Saloom Road, Suite 208
P.O. Box 52045
Lafayette, LA 70505-2045
(337) 237-5500
COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:
    Olivier Builders and LUBA

**COOKS, Judge.**

On June 23, 2003, Viel Olivier alleges he hurt his back and knee while unloading a commercial miter saw out of the rear of his truck after performing some carpentry trim work. Mr. Olivier was a self-employed carpenter, operating under the name of Olivier Builders – a business he owned and was its sole employee. In his capacity as owner of Olivier Builders, he contracted with LUBA to purchase workers' compensation insurance. Mr. Olivier informed LUBA he was making $27,300.00 annually, and using its payment scale LUBA set his premium at $3,683.00 per year.

After the alleged accident on June 23, 2003, the records revealed Mr. Olivier went to his family doctor a few days later. The doctor diagnosed that he suffered a shoulder and back sprain, as well as a knee contusion. The following week, Mr. Olivier sent to LUBA the required injury report. Apparently, LUBA's adjustor felt the injury was compensable, and indemnity payments were instituted in the amount of $350.00 per week. LUBA reduced Mr. Olivier's weekly compensation benefits after determining he was actually earning far less that the amount he told LUBA, and was only entitled to the minimum amount of benefits due, $114.00 per week.

Mr. Olivier filed a Disputed Claim for Compensation Benefits on June 2, 2006, seeking workers' compensation benefits due him, as well as penalties and attorney fees. Made defendants were Olivier Builders and, its workers' compensation carrier, LUBA. Mr. Olivier contended LUBA's indemnity benefits payments to him were in improper amounts and were not timely. He also contended they refused to provide him necessary medical treatment.

LUBA argued Mr. Olivier did not injure himself in the manner asserted, and alleged deception and fraud on the part of the claimant. They also alleged any miscalculation of benefits resulted in an overpayment, not underpayment, of benefits

to Mr. Olivier. Lastly, LUBA contended Mr. Olivier was capable of performing light-duty work and has refused to cooperate with vocational rehabilitation efforts.

After a hearing, the workers' compensation judge (WCJ) made the following rulings, which constituted the judgment of the court:

(1) Mr. Olivier was injured in the course and scope of his employment on June 23, 2003, and was entitled to weekly benefits in the amount of $114.00 per week, subject to a credit for all weekly benefits previously paid;

(2) All reasonable and necessary medical treatment recommended by Mr. Olivier's treating physician was authorized;

(3) A $300.00 penalty was assessed for the delay in starting indemnity payments;

(4) A $2,000.00 penalty was assessed against LUBA for a failure to authorize knee x-rays;

(5) A $2,000.00 penalty or twelve percent, whichever is greater, was assessed against LUBA for improperly reducing the weekly benefits as of June 1, 2005;

(6) A $2,000.00 dollar penalty or twelve percent, whichever is greater, was assessed against LUBA for failing to reinstate benefits upon receipt of Dr. Hodges' report that showed Mr. Olivier was again unable to work;

(7) Attorney fees were set at $19,328.00, based on the 83 hours Mr. Olivier's counsel advised the court he spent prosecuting the claim and his incurred expenses.

LUBA appealed the WCJ's judgment, and asserts the following four assignments of error:

1. The finding by the WCJ that claimant sustained personal injuries as a result of an accident in the course and scope of his employment with Olivier Builders is manifestly erroneous;

2. The WCJ was clearly wrong in failing to find claimant violated La.R.S. 23:1208, thereby forfeiting all rights to compensation benefits;

3. The finding by the WCJ that claimant is entitled to indemnity benefits in manifestly erroneous;

4.      The WCJ erred in assessing penalties and attorney fees.

Mr. Olivier also filed his own appeal, asserting the following assignments of error:

1.      It was error for the WCJ to find Mr. Olivier was only entitled to benefits at the rate of $114.00 per week;

2.      The WCJ erred in failing to exclude the defenses of LUBA due to the conflict of interest of defense counsel;

3.      The WCJ failed to award legal interest on all amounts due.

## ANALYSIS

It is well established that the standard of appellate factual review in workers' compensation cases is the same as for other civil cases, i.e., whether the findings made by the trier of fact are manifestly erroneous or clearly wrong. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551; *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733; *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The issues of whether a claimant has carried his burden of proof as to the occurrence of a work-related accident that caused an injury entitling him to workers' compensation benefits, whether testimony is credible, and whether the refusal to pay benefits and medical expenses warrants the imposition of penalties and attorney's fees are all questions of fact that are governed by the manifest error standard. *Roberts v. Thibodaux Healthcare Center*, 05-774 (La.App. 1 Cir. 3/24/06), 934 So.2d 84. Under the manifest error rule, an appellate court does not decide whether the factual findings are right or wrong, but whether they are reasonable. *Id*.

## I.    LUBA's Appeal.

In its first assignment of error, LUBA argues the WCJ manifestly erred in finding Mr. Olivier sustained injuries as a result of a work-related accident. It is

undisputed that the alleged accident suffered by Mr. Olivier was unwitnessed. However, the law is clear that a worker's testimony alone may be sufficient to discharge his burden of proving a work-related accident, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno*, 593 So.2d 357; *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979). Corroboration may be provided by medical evidence. *West*, 371 So.2d at 1150. The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822 (La.App. 2 Cir.), *writ denied*, 536 So.2d 1200 (La.1988).

The Employer's First Report of Injury, which was filled out by Mr. Olivier the day after the accident, is consistent with his description of the accident. The history provided to Dr. Felton, who treated Mr. Olivier after the accident, was also consistent with Mr. Olivier's version of the accident. Dr. Felton also found objective findings to substantiate Mr. Olivier's claims of injury.

LUBA argues Mr. Olivier was unable to recall many of the details surrounding the accident. The WCJ specifically noted that Mr.Olivier's memory of events came "up a little short in the depth of details he provided," but felt that was entirely consistent with the lengthy delay between the date of the injury and when Mr. Olivier was deposed and testified at trial. The record reveals Mr. Olivier was not deposed until September 11, 2007, which was over four years from the accident. The WCJ found Mr. Olivier to be credible, stating he was "a plain-spoken, forthright worker probably past his physical prime, who decidedly has not embarked on a scheme to

-4-

defraud anyone." We also note LUBA paid Mr. Olivier benefits for several years, until it suddenly called into question the legitimacy of his claim that he suffered a work-related accident.

After examining the record, we cannot say the WCJ was manifestly erroneous in his conclusion that Mr. Olivier proved the occurrence of a work-related accident. The WCJ made credibility determinations in favor of Mr. Olivier, which we find no reason to disturb, and we uphold the finding that a work-related accident occurred.

In its second assignment of error, LUBA argues the WCJ was clearly wrong in failing to find claimant committed fraud under La.R.S. 23:1208, thereby forfeiting all rights to compensation benefits. In its argument, LUBA contends Mr. Olivier "lied at his deposition, he lied to his treating physicians and he lied at the trial on this matter." However, as noted in the discussion on the previous assignment of error, the WCJ specifically found Mr. Olivier credible in his representations and testimony throughout the proceedings. Finding no manifest error in that conclusion, we find no merit in LUBA's contention that Mr. Olivier violated La.R.S. 23:1208.

LUBA also argues the WCJ was manifestly erroneous in concluding Mr. Olivier was entitled to indemnity benefits. We disagree. Dr. Hodges, the treating physician, issued a report on September 7, 2005 stating Mr. Olivier was unable to work. Since that time, no reports from any other physician have been issued to contradict that conclusion. Therefore, the WCJ did not err in finding Mr. Olivier was entitled to indemnity benefits.

LUBA also asserts the WCJ's assessments of penalties and attorney fees were not supported by the record. The WCJ assessed the following penalties: (1) $300.00 for the delay in starting indemnity payments; (2) $2,000.00 for the failure to authorize knee x-rays; (3) $2,000.00 or twelve percent, whichever is greater, for improperly

reducing the weekly benefits as of June 1, 2005; and (4) $2,000.00 or twelve percent, whichever is greater, for the failure to reinstate benefits upon receipt of Dr. Hodges' report showing Mr. Olivier was again unable to work. The WCJ also awarded $19,328.00 in attorney fees.

We find no error in the assessment of a $300.00 penalty for not starting indemnity payments on time. Our review of the record indicates the WCJ did not err in finding the first payment was six days late. The first payment made to Mr. Olivier was dated August 25, 2003. Defendants were aware that Mr. Olivier's physician determined he was disabled and unable to return to work on August 5, 2003. Therefore, under La.R.S. 23:1221, the first compensation check was required to be paid within fourteen days of that date, or August 19, 2003. Thus the payment dated August 25, 2003, was six days late.

The WCJ also awarded a $2,000.00 penalty for LUBA's failure to authorize knee x-rays. LUBA argues there was no evidence in the record that it ever denied a request for knee x-rays. We disagree. Dr. Felton's records indicate x-rays of the lumbar spine, upper back and knee were requested after Mr. Olivier's June 25, 2003 visit. The lumbar spine and upper back x-rays were approved and performed. However, Dr. Felton specifically testified that LUBA denied the knee x-rays. Therefore, the WCJ did not err in imposing this penalty.

LUBA also argues the WCJ erred in awarding a $2,000.00 penalty for improperly reducing compensation benefits. The WCJ gave the following reasons for awarding this penalty:

> LUBA's reduction of his weekly compensation benefits on June 1, 2005, from Fifteen Hundred Sixteen Dollars Seventy-five Cents per month to Four Fifty-four per month was both unnecessary, excessive and thoroughly improper. There was nothing approaching persuasive testimony to show that Mr. Olivier was at all uncooperative and recalcitrant in the vocational rehabilitation efforts, such as they were.

From all accounts, he dutifully applied for every single job submitted to him by the voc [sic] counselor. But not surprisingly, this sixty-year-old carpenter with bad knees, messed up shoulder and back problems was not in great demand for those jobs for which he was sent to apply.

We find the record supports the WCJ's reasoning. LUBA argues, because it was later determined that it was entitled to a credit for overpayments paid to Mr. Olivier, it should not have been assessed penalties for an improper reduction. The law is clear that for the purposes of assessing penalties, the decision to reduce benefits must be based upon facts existing and known to the employer/insurer at the time of the reduction. *Theriot v. American Employees Ins. Co.*, 482 So.2d 648 (La.App. 3 Cir. 1986); *Thibodeaux v. Dresser Industries, Inc.*, 407 So.2d 37 (La.App. 3 Cir.), *writ denied*, 412 So.2d 85 (La.1982). There was no showing by LUBA that there were any facts known to it at the time of the reduction that Mr. Olivier's weekly benefits were being overpaid. The benefits were reduced on July 1, 2005. The reason given by the adjuster was that Mr. Oliver was capable of obtaining gainful employment. As Mr. Olivier notes, the information regarding a possible credit was obtained long after the reduction of benefits was taken, and after suit was filed and responses to discovery were received. The penalty for improper reduction was not in error.

LUBA argues the trial court should not have assessed a penalty for the failure to reinstate benefits upon receipt of Dr. Hodges' report showing Mr. Olivier was unable to work. After a review of the record, we find there was evidence contradicting the reports of Dr. Felton and Dr. Hodges that Mr. Olivier was unable to work. Dr. Cobb released him to light duty work on December 1, 2003. Dr. Ray Williams also released Mr. Olivier to light duty work on February 20, 2004. Therefore, we reverse the trial court's award of a $2,000.00 penalty against LUBA for the failure to reinstate benefits.

We also find no abuse of the WCJ's discretion in awarding Mr. Olivier

$19,328.00 in attorney fees. This award was based on documented hours worked and expenses incurred by Mr. Olivier's counsel.

## II. Mr. Olivier's Appeal.

Mr. Olivier argues the WCJ erred in finding he was only entitled to benefits at the rate of $114.00 per week. Specifically, he argues the WCJ erred in calculating his average weekly wage. We agree.

The record indicated that before becoming self-employed, Mr. Olivier worked for Jim Olivier Home Improvement for a number of years prior to his injury. For over two years before the injury, Mr. Olivier was earning a salary of $3,300.00 per month. On May 25, 2003, Mr. Olivier left Jim Olivier Home Improvement. The accident occurred on June 23, 2003. Thus, Mr. Olivier was only self-employed for four weeks.

The WCJ indicated that the proper manner of determining Mr. Olivier's wages was under La.R.S. 23:1021(10)(d). However, as Mr. Olivier notes, the WCJ used the after tax earnings to compute the average weekly age, apparently concluding that Mr. Olivier was an independent contractor while he worked for Jim Olivier Home Improvement.[1] The WCJ erred. Mr. Olivier's gross earnings should have been used for the time he was employed by Jim Olivier Home Improvement because he was presumed to be an employee under La.R.S. 23:1044, which provides, in part:

> A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.

Although the presumption that Mr. Olivier was an employee of Jim Olivier Home Improvement is rebuttable, there was no evidence in the record to overcome this

---

[1] The jurisprudence has recognized that an employee's expenses are deducted from his gross earnings if the employee supplies his own equipment or helpers. *Young v. Gulf Coast Carpets*, 04-854 (La.App. 3 Cir. 11/17/04), 888 So.2d 1074. There was no indication in the record that this was the case while Mr. Olivier worked for Jim Olivier Home Improvement.

presumption. The employer bears the burden of proof in overcoming this presumption and showing that a worker was not an employee for workers' compensation purposes. *Estate of Harris v. Ledet*, 95-485 (La.App. 3 Cir. 11/2/95), 664 So.2d 561, *writ denied*, 95-2894 (La. 2/2/96), 666 So.2d 1102.

At the time of the accident, La.R.S. 23:1021(10)(d) read as follows:

**Other wages**. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.

During the twenty-six week period prior to the accident, the record establishes Mr. Olivier earned $16,500.00 from Jim Olivier Home Improvement ($3,300.00 per month for five months, or twenty-two weeks). He was not able to establish any income after becoming self-employed; therefore, we will use zero income for the four weeks prior to the injury. Therefore, Mr. Olivier had $16,500.00 in gross earnings in the twenty-six week period prior to the accident. Although Mr. Olivier was unable to specify the exact number of days he worked, he did testify he "mostly" had weekends off. Therefore we will assume he worked five days per week. Using this figure, Mr. Olivier's average weekly wage for the twenty-six week period is $634.62. His weekly benefit rate is then determined by calculating sixty-six and two-thirds percent of the average weekly wage, or $634.62. La.R.S. 23:1221(1)(a). Therefore, Mr. Olivier's weekly compensation rate was $423.08 per week, not the $114.00 as determined by the WCJ.

Mr. Olivier also argues the WCJ erred in failing to exclude the defenses of

LUBA due to the conflict of interest of defense counsel. Counsel for Mr. Olivier noted his client was self employed, and filed his claim against Olivier Builders, his own company, and its insurer, LUBA. Because counsel for LUBA answered the claim on behalf of both Olivier Builders and LUBA, it is argued he was impermissibly representing both Mr. Olivier and LUBA.

The WCJ noted that because LUBA was sued as Olivier Builder's insurance company, it was forced to respond in a defensive mode. LUBA then determined that Mr. Olivier had committed fraud in this action, and it pursued the matter in that light. As the WCJ noted, Mr. Olivier could not "seriously look to LUBA to defend him against allegations that he violated the provisions of the 1208 fraud statute . . ., [and] [i]t would be exceedingly awkward, if not unrealistic, for LUBA to provide an attorney to assist Mr. Olivier in defending himself against the very charges that LUBA is levying against him." Thus, Mr. Olivier needed to secure his own attorney, which he did. Mr. Olivier can hardly argue he was prejudiced, as his attorney vigilantly represented him and was successful on the vast majority of issues presented below, including obtaining a significant award of attorney fees. Although the situation that occurred in the present case was both unique and awkward, we agree with the WCJ that it did "not rise, or sink depending on your point of view, to the level of malpractice." Therefore, the WCJ did not err in failing to exclude the defenses asserted by LUBA.

Mr. Olivier also argues the WCJ erred in failing to award legal interest on all amounts due. Louisiana Revised Statutes 23:1201.3(A) provides that "[a]ny compensation awarded . . . shall bear judicial interest from the date compensation was due[;]" therefore, imposition of interest is required on compensation. *See Cormier v. Louisiana Southwest Scrap & Salvage*, 04-321 (La.App. 3 Cir. 12/1/04),

888 So.2d 1117; *Mitchell v. Brown Builders, Inc.*, 35,022 (La.App. 2 Cir. 8/22/01), 793 So.2d 508, *writ denied*, 01-2649 (La. 12/14/01), 804 So.2d 636. Therefore, we amend the judgment to include legal interest beginning on the date compensation was due.

Mr. Olivier also requests legal interest be included on the award of penalties and attorney fees. He does note that the Louisiana Supreme Court, in *Smith v. Quarles Drilling Co.*, 04-179 (La. 10/29/04), 885 So.2d 562, held that La.R.S. 23:1201.3 does not apply to penalties and attorney fees, only to benefits. However, the court in *Quarles* noted that a party is entitled to legal interest on an award of penalties and attorney fees if the party prayed for interest in his pleadings. Mr. Olivier prayed for interest in the court below and before this court. Therefore, we award him interest on the awards of penalties and attorney fees.

Lastly, Mr. Olivier seeks an award of additional attorney fees for work performed on appeal. Accordingly, we award an additional $3,000.00 in attorney fees for the work necessitated by LUBA's appeal.

### DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation awarding weekly indemnity benefits to Viel Olivier in the amount of $114.00 is amended to award him $423.08 per week in accordance with La.R.S. 23:1021(10)(d). The judgment is also amended to include legal interest beginning on the date compensation was due and to include legal interest on the awards of penalties and attorney fees beginning on the date of judgment. The portion of the judgment awarding a $2,000.00 penalty against LUBA for the failure to reinstate benefits is reversed. Additionally, judgment is rendered in favor of Viel Olivier in the amount of $3,000.00 in additional attorney fees for the work necessitated by the present

appeal. In all other respects, the judgment of the Office of Workers' Compensation

is affirmed.

**AFFIRMED IN PART, REVERSED IN PART; AMENDED IN PART; AND RENDERED.**