WHIPPLE, J.
In this workers’ compensation case, the claimant, James Todd, appeals from judgments of the Office of Workers’ Compensation (“OWC”) finding a compensable accident occurred and that the claimant sustained an aggravation of his condition as a result, but that claimant was not entitled to indemnity benefits, a new trial, *684 or modification. For the following reasons, we affirm the judgment on the merits and the denial of the motion for new trial.
FACTS AND PROCEDURAL HISTORY
On April 3, 2001, the claimant, while employed as a stocker at Wal-Mart’s Tire and Lube Express, filed a Disputed Claim For Compensation Form 1008 with the OWC. He alleged that on April 18, 2000, he injured his right shoulder while pulling a pallet of windshield fluid in the course and scope of his employment and that Wal-Mart, “failed to pay or have refused to continue paying any of the correct compensation and/or medical benefits in addition to that paid or owed and that the [defendant’s] failure to pay is arbitrary and capricious and without probable cause and that the said defendants shall [be condemned] to pay (12%) penalty on the total amount of [plaintiffs] loss, together with all reasonable attorney’s fees for the prosecution of this action, along with all legal interest.”
He later filed an amended 1008, supplementing his original claim and alleging as follows:
Mr. Todd went back to work after his original injury of April 2000 to October 2000 and then he had shoulder surgery. He then returned to work with limitations, from January 2001 to March 2001 but he was not offered light duty, only his regular job, therefore in the abundance of caution and in the alternative the claimant alleges a second injury occurred that is occupationally related to his job during the period of time he returned to work from January 2001 to March 2001, which made his pre-existing disability worse.
The matter proceeded to trial on February 25, 2002, after which the OWC judge rendered judgment on March 8, 2002, finding: 1) that Todd suffered a | ¡¡compensable accident on April 8, 2000, which was aggravated by a subsequent accident on April 18, 2000; and 2) that Todd was not entitled to indemnity benefits “after the date of his resignation on March 21, 2000[sic] through the date of trial.”[2]
On March 21, 2002, Todd filed a “Motion for New Trial/Motion for Modification” contending the judgment was contrary to the law and evidence presented. After hearing argument on the matter, by judgment dated May 17, 2002, the OWC judge denied his request for new trial and modification.
Todd then filed the instant appeal.
CLAIM FOR ADDITIONAL BENEFITS
(Assignment of Error No. 1)
In this assignment of error, Todd contends that the OWC judge committed manifest error by denying claimant’s claim for additional benefits. Specifically, Todd contends that Wal-Mart did not offer him a job within his restrictions, and therefore, Wal-mart owes him past and future benefits.
In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the manifest error or clearly wrong standard. Boudreaux v. Angelo Iafrate Construction, 2002-0992, p. 2 (La.App. 1st Cir.2/14/03), 848 So.2d 3, 6, 2003 WL *685 343178. The two-part test for appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the finding of a trial court, and (2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if a reasonable factual basis exists, an appellate court may set aside a trial court’s factual findings only if, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. See Stobart v. State, through, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).
In detailed and well-written reasons for judgment, which we attach hereto as “Appendix A” and make a part hereof, the OWC judge reviewed the conflicting evidence as to whether Todd was entitled to indemnity benefits subsequent to his March 21, 2001 resignation and concluded that “[he had] not proven that his resignation had anything to do with restrictions from his work injury nor from his employer forcing him to work beyond his doctor’s restrictions,” and, thus, had not proven entitlement to indemnity benefits subsequent to his resignation.
On review, we conclude the factual findings of the OWC judge are amply supported by the record, given: (1) the testimony of Todd that he was a fifty-eight year old male at the time of trial and had a history of prior injuries to his back and neck, diabetes, deafness in one ear, blindness in his right eye, arthritis, bursitis, tendonitis, and that due to his many health problems, he had been trying to qualify to receive disability benefits; (2) the testimony of Dewayne Gilmore, Todd’s immediate supervisor and manager of the Wal-Mart Tire and Lube Express, that he instructed Todd to work within his limitations and assigned him to “cleaning and zoning”[3] in his department, which required him to lift no more than five pounds; (3) the testimony of Larry Lamb, co-manager of Wal-Mart, that he was present when Todd was instructed to work within his restrictions as set forth by Dr. Brett J. Chiasson, performing cleaning and zoning duties only, and that he specifically told Todd that if he needed help, employees from another division of the store would be assigned to pull pallets for him; (4) the testimony of Denise Wilson, personnel manager of Wal-Mart, that she was also present at the meeting (and on two other ^occasions) with Larry Lamb and Dewayne Gilmore when Todd was specifically instructed to follow the restrictions and stay within the boundaries the doctor had given him, and that he was to perform zoning and cleaning duties in the Tire and Express Lube Department within his physical limitations; and (5) the testimony of Todd’s co-worker, Joey DiMaggio, that he was instructed by his supervisor, Dewayne Gilmore, that he was to do all of the heavy lifting and Todd was to perform light-duty tasks only, and that if he witnessed Todd performing heavy lifting, he was to stop and assist Todd and was to prevent him from lifting anything heavy. Accordingly, given the record before us, we conclude that the underlying factual findings upon which the OWC judge based its denial of Todd’s claim for additional benefits after resignation is amply supported by the evidence and is not manifestly erroneous.
This assignment of error lacks merit.
AVERAGE WEEKLY WAGE/MOTION FOR NEW TRIAL
(Assignments of Error Nos. 2, 3, & 4)
In the remaining assignments, Todd argues that the OWC judge erred in *686 failing to modify the pretrial order thereby failing to address his claims regarding the computation of the average weekly wage, and that the OWC judge erred in failing to grant his motion for new trial/motion for modification of the average weekly wage. Todd further contends that if the failure of the OWC judge to address the issue of average weekly wage is equivalent to a denial, then the OWC judge erred by denying Todd an increase in his average weekly wage and by refusing to award attorney’s fees and penalties.
The OWC judge found that while Todd attempted at trial to raise the issue of an incorrect calculation of average weekly wage and/or compensation rate, “this was not listed in pre-trial statement nor briefed nor supported in post-trial | ^memorandum.” Therefore the OWC judge denied the claim. Hearing Rule Section 6201 of the OWC judge provides that:
Only those issues listed in the pretrial statements shall be litigated at trial. No new issues shall be raised except by written order of the judge for good cause or upon mutual agreement of the parties.
Todd’s pretrial statement was filed into the record on August 24, 2001. Although the statement listed several contested issues, no request for list modification or recalculation of weekly average wage was included therein. He filed an amended pretrial statement on December 17, 2001, to name an additional witness, yet again did not mention any issue concerning improper calculation or modification of the average weekly wage.
Instead, the trial transcript shows that he attempted to address the average weekly wage issue in closing arguments after both parties had presented their witnesses’ testimony. After Todd’s counsel mentioned increasing the average weekly wage, the OWC judge responded, “Okay. Slow down a bit because this is the first I’m hearing of this.” The OWC judge concluded the hearing with the following exchange:
BY THE COURT:
Okay. I don’t think I need any posttrial briefs; but if you’re interested in submitting one, just let me know now so I can give you a deadline.
BY MR. KREAMER:
I don’t plan on submitting one.
BY MR. BRUNO:
Unless you feel — do we need anything on the average weekly wage? I could get that....
BY THE COURT:
Okay. Let’s just do it this way then. If you feel like you want to, you know, send me anything regarding the average weekly wage, corresponding comp rate, make sure you have it to me by March 8th. It’s not this Friday but next Friday. ... I’m, you know, very close to |7coming to some kind of decision on it. So while it’s still fresh, I’d like to get it out. So no later than March 8th if you feel like you need to. And that’s it.
The OWC judge rendered judgment accordingly, as promised, on March 8, 2002, and issued written reasons for judgment on March 11, 2002. Todd’s post-trial memorandum was filed on March 12, 2002, three days after the judgment was rendered and one day after the reasons for judgment were rendered. Under these circumstances and considering OWC rules and the record as a whole, we are unable to find an abuse of discretion by the OWC judge either in refusing to address or modify the average weekly wage figure.
On March 21, 2002, claimant filed a “Motion for New Trial/Motion for Modification” asking the OWC judge to modify the ruling on the issue of average weekly *687 wage, in the event that the judge denied the motion for new trial. Alternatively, claimant requested that the OWC judge rule on the issue (by recalculating the amount, in Todd’s favor) using the previously-submitted evidence. After a hearing, the OWC judge denied the motion for new trial and for modification.
The granting or denying of a motion for new trial rests within the wide discretion of the trial court, and its determination should not be disturbed absent a clear abuse of discretion. LSA-C.C.P. arts. 1972, 1973. After thorough review of the record herein, we find no abuse in the OWC judge’s wide discretion in denying the motion for new trial/motion for modification.
Finally, claimant argues that if this court finds that the failure of the OWC judge to reach the average weekly wage issue was equal to a denial, then the OWC judge erred in denying the request for an increase in claimant’s average weekly wage and refusing to award attorney’s fees and penalties. For the reasons discussed above, we find no abuse of discretion in the OWC judge’s refusing to address Todd’s attempt to modify the average weekly wage after judgment had |sbeen rendered and reasons for judgment were issued. As the OWC judge noted, this issue was not timely raised in the pretrial statement or post-trial memorandum. Because the average weekly wage issue was not properly raised in the prior proceedings, and was properly denied by the OWC judge, this court is precluded from addressing the merits of the claim on appeal.
Thus, these assignments also lack merit.
CONCLUSION
For the above and foregoing reasons, the March 8, 2002 judgment of the OWC is affirmed, as amended to change “March 21, 2000” to “March 21, 2001.” In all other respects, the judgment is affirmed. The May 17, 2002 judgment of the OWC denying the claimant’s “Motion for New Trial/Motion for Modification” is likewise affirmed. Given the claimant’s pauper status, we decline to assess costs of this appeal to Todd.
AFFIRMED, AS AMENDED.
11 APPENDIX “A”
JAMES TODD
VS.
WAL-MART
DOCKET 01-02384 DISTRICT 6S
OFFICE OF WORKERS’ COMPENSATION
STATE OF LOUISIANA
REASONS FOR JUDGMENT

BACKGROUND

Claimant James Todd allegedly injured his right shoulder on two occasions while working at Wal-Mart, one on April 8, 2000 then again on April 13, 2000. Mr. Todd continued to work until October 4, 2000, at which time he underwent arthroscopic acromioplasty and distal clavicle resection by Dr. Brett Chiasson. He was released to return to work by Dr. Chiasson on December 28, 2000 with a lifting restriction of no greater than 5 pounds.
Mr. Todd returned to work at Wal-Mart on January 10, 2001, and worked until March 21, 2001 at which time he resigned his position, stating that Wal-Mart was not complying with his doctor’s orders regarding light duty, i.e. that he was being forced to do more physically than his doctor had recommended.
*688 The only issues for the court to decide are (1) whether Mr. Todd suffered a com-pensable accident at Wal-Mart on April 8, 2000 and/or April 13, 2000; and (2) whether Mr. Todd is entitled to indemnity benefits subsequent to his March 21, 2001 resignation.

\ ¿FINDINGS OF FACT

The court finds that the lay testimony and medical evidence preponderates in favor of Mr. Todd as to whether he suffered a compensable injury at Wal-Mart on April 8, 2000 and/or April 13, 2000.
Wal-Mart relies on an emergency room record from North Oaks Hospital dated April 14, 2000 in which Mr. Todd allegedly reported a two-month history of right shoulder pain to cast doubt on the occurrence of an accident. However, the same report goes on to say that Mr. Todd reported that the pain got worse that night “at work while stocking shelves.” Again, on April 17, 2000 he reported first hurting his shoulder two months prior, but again goes on to say he “re-hurt right shoulder on Friday p.m. 4/14/00.”
The court finds that these inconsistencies are insignificant in light of the lay testimony of Molly Webre, Randy Bailey and John Gulota, all co-workers who testified that they were aware of Mr. Todd’s shoulder injury. Thus, the court finds that Mr. Todd suffered a compensable injury on April 8, 2000 which was subsequently aggravated by an injury on April 13, 2000 while pulling a pallet of liquid wax and stocking the wax on the shelves.
On the issue of whether Mr. Todd is entitled to indemnity benefits subsequent to his March 21, 2001 resignation, the court finds that Mr. Todd has not proven that his resignation had anything to do with restrictions from his work injury nor from his employer forcing him to work beyond his doctor’s restrictions. Mr. Todd testified that he is 58 years old. He has a history of prior injuries to his back, and his neck (which was fused in 1982 or 1983, following a motor vehicle accident). He also testified he is going blind in his right eye and that since his resignation he has been attempting to get on disability because ofjjhis many health problems. Mr. Todd testified that not only was he not offered light duty on his return to work in January 2001, he was forced to do the same job as before, i.e. pulling and pushing pallets, lifting cases of products ranging from 5 to 90 pounds, and stocking shelves with those products.
The court finds that the lay testimony of co-workers at trial categorically disputes Mr. Todd’s description of his job duties upon returning to work in January 2001.
Dewayne Gilmore was the manager of the tire and lube department at the time of Mr. Todd’s injury and return to work. Gilmore testified that upon Mr. Todd’s return to work, he had a meeting with Mr. Todd and his wife (also a Wal-Mart employee) and Denise Wilson, personnel manager at the Wal-Mart store. Mr. Gilmore testified that he told Mr. Todd that he was to wok within Dr. Chiasson’s restrictions, specifically “cleaning and zoning.” Mr. Gilmore testified that “cleaning and zoning” consisted of light dusting of the employee’s work area, and pulling products to the front of shelves. Mr. Gilmore testified that while he had heard that Mr. Todd was doing tasks outside of his restrictions, he never personally told Mr. Todd to do anything more than cleaning and zoning.
Larry Lamb testified that he was a co-manager of the Wal-Mart Store at the time of Mr. Todd’s return to work in January 2001. Mr. Lamb testified that at the time of his return to work, Mr. Todd was only supposed to be dong cleaning and *689 zoning in the tire and lube department. Mr. Lamb testified that he offered the help of employees in his department whenever Mr. Todd would have been required to more heavy products.
Denise Wilson was the personnel manager at the Wal-Mart store at the time of Mr. Todd’s injury and return to work. Ms. Wilson’s testimony confirmed that there was a meeting held with Mr. Todd and his wife, Mr. Gilmore, and herself upon Mr. Todd’s return |4to work in January 2001. Ms. Wilson testified that Mr. Gilmore was concerned about Mr. Todd following his doctor’s restrictions regarding his 5-pound lifting limit and that Mr. Gilmore told Mr. Todd that he was only to do cleaning and zoning. She further testified that Mr. Todd was not transferred to another department since she understood that he could be accommodated in the tire and lube department. She confirmed that to her knowledge, Mr. Todd was never told to do more than cleaning and zoning, nor was he threatened with termination. She testified that on at least three occasions, she was present when Mr. Todd was told not to do anything that would exceed his doctor’s restrictions.
The court finds the testimony of Joey DiMaggio the most credible. Mr. Dimag-gio testified he has worked as a night stocker at Wal-Mart’s tire and lube department for as long as Mr. Todd has. It is important to note that Mr. Todd worked nights, usually the 9:00 p.m. to 6:00 a.m. or 10:00 p.m. to 7:00 a.m. shift.
Thus, Mr. Gilmore, Ms. Wilson and Mr. Lamb did not work side-by side with Mr. Todd, although on occasions Mr. Gilmore’s arrival at work would overlap with Mr. Todd’s departure. In any event, Mr. Dimaggio actually worked the same shift as Mr. Todd. Mr. DiMaggio testified that before Mr. Todd’s accident, they would split their duties equally. However, after Mr. Todd’s accident and subsequent return to work, Mr. DiMaggio testified that he understood that Mr. Todd was not do any heavy work and that Mr. DiMaggio was to do all the “heavy stuff.” Mr. DiMaggio testified there was plenty of light work to do, such as cleaning and zoning air fresheners, fuses, and light bulbs. He testified there were also products to be stocked which weighed less than 5 pounds. Finally, Mr. DiMaggio testified that while Mr. Todd told him Mr. Gilmore was making him do his regular job, Mr. DiMaggio |Knever heard Mr. Gilmore say this; on the contrary, Mr. DiMaggio testified that he was given the authority by Mr. Gilmore to tell Mr. Todd that he was not to lift any heavy products.
Based on the foregoing, the court finds that Mr. Todd has not proven entitlement to indemnity benefits subsequent to his resignation in March 2001.
Finally, counsel for Mr. Todd attempted at trial to raise the issue of an incorrect calculation of average weekly wage and/or compensation rate. However, this was not listed in pre-trial statement nor briefed nor supported in post-trial memorandum. Therefore, that claim is DENIED.
REASONS READ RENDERED AND SIGNED in Covington, Louisiana this the 11th day of March, 2002.
/s/ Elizabeth A. Warren ELIZABETH A. WARREN,
Workers’ Compensation Judge, Eastern Division-District 6S

. Although the March 8, 2002 judgment specifies March 21, 2000 as the date of Todd's resignation for purposes of loss of entitlement to indemnity benefits, the parties do not dispute that this triggering date was actually March 21, 2001. Thus, in the interest of justice, we amend the judgment to correct this typographical error.

. According to Gilmore, the “cleaning and zoning” consisted of light dusting of the employee's work area and pulling products to the front of the shelves.