WHIPPLE, J.
| .This is an appeal by plaintiff, Anderson Cutno, from a judgment of the Office of Workers’ Compensation, District 6, dismissing Cutno’s claim for additional benefits and awarding reimbursement to the workers’ compensation carrier for all benefits paid after March 28, 2005. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Cutno, a forklift operator, was injured in a work-related accident on November 19, 2004, while employed by Gainey’s Concrete Products (Gainey’s). Cutno fell from the forklift and struck the ground three feet below, twisting his knee. He first sought treatment for his injuries on November 22, 2004, and he initially reported complaints of right knee and hip pain. With regard to the hip, he was diagnosed with “soft tissue swelling [and] tenderness compatible with a bruise.” X-rays and an MRI of his knee demonstrated that there was no fracture or internal derangement. According to the medical records, Cutno’s treatment thereafter focused on his knee, for the pain and swelling he was experiencing.
During treatment of his knee, a dispute arose between Cutno and his employer’s insurance company as to whether Synvisc injections in the right knee were medically necessary. Additionally, five months after Cutno’s accident, a question arose as to whether Cutno had also sustained a back injury as a result of the work accident. Cutno eventually filed a disputed claim for compensation. The issues raised by the parties- included: (1) Cutno’s average weekly wage and corresponding weekly indemnity rate; (2) Cutno’s entitlement to Synvisc injections for the right knee; (3) whether Cutno’s back complaints were related to the work accident; (4) the nature and extent of Cutno’s disability and wheth *488 er such disability was related to |sthe work accident; and (5) Cutno’s entitlement to penalties and attorney’s fees.
Following trial in this matter, the workers’ compensation judge ordered additional medical testing and a report from Cutno’s treating physician to determine whether his back and hip problems were caused by the work accident. After receiving the physician’s report, the workers’ compensation judge rendered judgment, finding that Cutno had failed to carry his burden of proving: that the Synvisc injections were reasonable and necessary medical treatment as contemplated by LSA-R.S. 23:1203 [1]; that he injured his back and/or his hip as a result of the work-related accident; and that he was temporally and totally disabled as a result of the work-related accident. The workers’ compensation judge further found that Cutno had returned to his pre-accident condition as of March 28, 2005, and that the workers’ compensation insurer for Gainey’s, who had continued to pay weekly indemnity benefits through the date of trial, was entitled to reimbursement for indemnity benefits paid after March 28, 2005. Cut-no’s request for penalties and attorney’s fees was likewise denied. Cutno now appeals, listing six assignments of error.
ISSUES BEFORE THE WORKERS’ COMPENSATION JUDGE
(Assignments of Error Nos. 1 & 3)
In his first assignment of error, Cutno contends that the workers’ compensation judge erred as a matter of law in addressing issues not properly before the workers’ compensation court. Also, in assignment of error number three, Cutno contends that the workers’ compensation judge erred in failing to follow the parties’ judicial stipulation and compromise regarding his entitlement to indemnity benefits.
14SpecificalIy, Cutno contends that at the beginning of trial, defense counsel stipulated as to Cutno’s average weekly wage and corresponding compensation rate; agreed to pay the difference due on all past weekly indemnity benefits paid; and stated that Gainey’s, as part of the partial compromise, would pay a penalty of $1,000.00 “to resolve any and all claims with regard to indemnity benefits” raised in Cutno’s disputed claim for compensation. (Emphasis in Cutno’s brief).
Additionally, according to Cutno, defense counsel further stipulated that the only issues to be tried were approval of certain medical procedures and Cutno’s entitlement to penalties and attorney’s fees. Despite the fact that the pretrial statement of Gainey’s listed other disputed issues to be tried, Cutno contends that the workers’ compensation judge was bound by the stipulation of defense counsel and that the issues for resolution by the OWC judge were limited to only those specific issues, ie., approval of certain medical procedures and penalties and attorney’s fees.
Pursuant to rule 6201 of the Office of Workers’ Compensation Hearing Rules, only those issues listed in the pretrial statements shall be litigated at trial. We also note that the workers’ compensation judge has great discretion in conducting trials in a manner that he determines to be consistent with the fair administration of justice. Teano v. Electrical Construction, Co., 2002-2032 (La.App. 1st Cir.5/9/03), 849 So.2d 714, 719. In the instant case, the issues of the nature and *489 extent, if any, of Cutno’s continuing disability and Cutno’s entitlement to disability and medical benefits, if any, were clearly listed in Gainey’s pretrial statement as issues to be litigated. Moreover, counsel for Cutno stated at the beginning of |RtriaI that Cutno had “submitted a final pretrial which enumerates several issues.” Some of the issues listed in Cutno’s final pretrial statement were whether he had suffered injuries as a result of the work-related accident, which injuries were causally related to the work accident, and whether Cutno was entitled to past or future Temporary and Total Disability (TTD) or Supplemental Earnings Benefit (SEB) payments.
Furthermore, while Cutno is correct in arguing that a stipulation has the effect of a judicial admission or confession, Veal v. American Maintenance and Repair, Inc., 2004-1785 (La.App. 1st Cir.9/23/05), 923 So.2d 668, 673, in the instant case, there was clearly a dispute as to what the parties intended to stipulate. Notably, when plaintiffs counsel stated that the parties were additionally stipulating that Gainey’s and its insurer “does [sic] not have any information to dispute the assertion that 100 percent of the disability that [Cutno] now suffers is causally connected to the injury” alleged in the Disputed Claim, defense counsel objected to that stipulation, stating that that issue was indeed an issue to be tried.[2]
Accordingly, based on our review of the record and considering the OWC rules, we find no abuse of discretion by the workers’ compensation judge in addressing the issues of the nature and extent of Cutno’s disability from the work accident and whether he was entitled to any additional disability and medical benefits. See Todd v. Wal-Mart, 2002-1381 (La.App. 1st Cir.5/9/03), 849 So.2d 682, 686, writ denied, 2003-1596 (La.10/3/03), 855 So.2d 319.
CUTNO’S ENTITLEMENT TO ADDITIONAL BENEFITS
(Assignments of Error Nos. 2 & 4)
In his second assignment of error, Cutno contends that the workers’ compensation judge committed manifest error in finding: (1) that Cutno had returned to his pre-accident condition as of March 28, 2005; (2) that he failed to prove his entitlement to TTDs or SEBs; and (3) that the workers’ compensation insurer was entitled to reimbursement of indemnity benefits paid after March, 28, 2005. In his fourth assignment of error, Cutno contends that the workers’ compensation judge committed manifest error in concluding that Cutno had failed to prove his back and hip conditions were caused or aggravated by his work-related accident.
A workers’ compensation claimant must prove by a preponderance of the evidence that an employment accident occurred and that it had a causal relationship to the resulting disability. Roberts v. Thibodaux Healthcare Center, 2005-0774 (La.App. 1st Cir.3/24/06), 934 So.2d 84, 92; *490 Grant v. Assumption Parish School Board, 2001-0272 (La.App. 1st Cir.3/28/02), 813 So.2d 622, 624.
When an employee suffers from a pre-existing medical condition, he may still prevail if he proves that the accident aggravated, accelerated, or combined with the disease for which compensation is claimed. Roberts, 934 So.2d at 92. When an employee proves that before the accident, he had not manifested disabling symptoms, but that commencing with the accident, the disabling symptoms appeared and manifested themselves, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling |7condition, the employee’s work injury is presumed to have aggravated, accelerated or combined with the pre-existing disease or infirmity to produce his disability. Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Roberts, 934 So.2d at 92-93.
Whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Roberts, 934 So.2d at 91. Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of review. Clausen v. D.A.G.G. Construction, 2001-0077 (La.App. 1st Cir.2/15/02), 807 So.2d 1199, 1202, writ denied, 2002-0824 (La.5/24/02), 816 So.2d 851.
Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Lizana v. Gulf Coast Pain Institute, 2003-1672 (La.App. 1st Cir.5/14/04), 879 So.2d 763, 765. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990). Moreover, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
I sIn the instant case, with regard to whether the accident caused any back or continuing hip injury, we note that Cutno initially reported on his medical questionnaires that he was experiencing knee and hip pain only. He was diagnosed at North Oaks Hospital on November 22, 2004 with a bruise to the hip. Dr. Paul Doty, the employer’s choice of orthopedic surgeon, examined Cutno on November 23, 2004, and performed a Patrick’s test, which was negative for any injury to the hip. Additionally, according to Dr. John Famb-rough, Cutno’s choice of orthopedic surgeon, during the course of his treatment of Cutno from December 6, 2004 to January 26, 2005, Cutno never complained of any back or hip problems.
On appeal, Cutno argues that he carried his burden of establishing causation noting that when he was examined by Dr. Doty on March 28, 2005, Dr. Doty expressed the opinion that Cutno was suffering from sciatica and pain radiating from the lower back into the right hip and leg, which he related to the work accident. When Dr. Doty examined Cutno again on March 28, 2005, he noted that Cutno had diminished *491 range of motion in the lower back with low back distress and sciatica. Dr. Doty further noted that Cutno had been treated in the past for a disc bulge and lumbar disc syndrome, and he opined that Cutno may have “torqued his right lower extremity causing this present sciatica.” Cutno contends, Dr. Doty’s opinion clearly established causation for his current back and hip complaints.
However, the record reflects that after again reviewing the records of Dr. Famb-rough (the treating physician), Dr. Doty changed his opinion as to the causal connection between Cutno’s back and hip complaints and the work accident. Specifically, Dr.'Doty noted that Cutno had never complained to Dr. Fambrough of back complaints or sciatica throughout the course of Dr. Fambrough’s treatment of Cutno. Thus, Dr. Doty opined, 19given Cut-no’s lack of complaints of sciatica or low back pain in the months following the accident, Dr. Doty could not say with reasonable medical certainty that these problems resulted from the November 19, 2004 work accident.
Moreover, in addition to noting the lack of back or hip complaints during his treatment of Cutno, Dr. Fambrough also stated that Cutno never had “any hint of sciatica,” which would have been caused by a disc bulge. After MRIs of Cutno’s lumbar spine and pelvis were performed following trial of this matter, Dr. Fambrough issued a follow-up report, stating that the MRI of the pelvis was normal and that the MRI of the lumbar spine revealed degenerative changes compatible with Cutno’s age.
With regard to Cutno’s right knee injury, Dr. Fambrough recognized that Cutno suffered from pain and swelling after the accident. However, Dr. Fambrough noted that Cutno had previously exhibited mild effusion (or fluid in his knee), a condition for which he had recently been treated, in August 2004, due to degenerative changes in his knee. Thus, Dr. Fambrough believed that the work accident had caused Cutno’s pre-existing degenerative knee condition to become inflamed and develop fluid in the joint.
While Dr. Fambrough recommended Synvisc injections for the knee on January 14, 2005, Dr. Fambrough last treated Cut-no on January 26, 2005, at which time there was no acute swelling, discoloration or increased heat and Cutno’s complaints were noted only as discomfort with prolonged standing. Cutno never returned to Dr. Fambrough for any additional treatment or pain medication for the knee.
Thereafter, when Dr. Doty examined Cutno on March 28, 2005, he noted that Cutno did not have any effusion of his right knee and that the |inknee was stable. Dr. Doty opined that while Cutno had strained his degenerative knee in the work accident, that injury had resolved itself as of March 28, 2005.
Considering the foregoing and the record as a whole, and the standards of review by which we are bound, we are unable to say that the workers’ compensation judge committed manifest error in finding that Cutno’s work-related injury to his right knee had resolved as of March 28, 2005 or in finding that Cutno failed to establish a causal connection between his later back and hip complaints and the work accident, particularly given the absence of complaints for months after the accident.[3] On the record before us, we are unable to say the OWC judge manifestly erred in concluding that Cutno failed to prove a continuing work-related disability (and entitlement to any continuing bene *492 fits). Thus, the judge properly ruled that Gainey’s workers’ compensation insurer was entitled to reimbursement for benefits paid after March 28, 2005.
PENALTIES, ATTORNEY’S FEES AND JUDICIAL INTEREST
(Assignments of Error Nos. 5 & 6)
In his final assignments of error, Cutno contends that the workers’ compensation judge erred in failing to award him penalties and attorney’s fees for failure to authorize and pay for medical benefits and in failing to award judicial interest on benefits due. However, because we have concluded that the workers’ compensation judge was not manifestly erroneous in finding that Cutno was not entitled to any additional benefits, these issues are moot.
^CONCLUSION
For the above and foregoing reasons, the May 31, 2006 judgment is affirmed. Costs of this appeal are assessed against appellant, Anderson Cutno.
AFFIRMED.
McDONALD, J., concurs.

. Cutno has not challenged on appeal the workers’ compensation judge's finding that the injections were not reasonable and necessary medical treatment, contending that the issue is “moot for the moment,” since he will "have to see a new doctor.”

. As explained by the workers’ compensation judge in reasons for judgment, the partial compromise and agreement to pay $1,000.00 dealt with the issue of whether Cutno worked a forty-hour work week and thus, what his average weekly wage and corresponding weekly indemnity benefit should have been. Gainey’s stipulated that Cutno was entitled to a presumption that he worked forty hours per week, which affected the calculation of the compensation rate to which Cutno was entitled. In addition to agreeing to pay the difference for all past indemnity benefits, Gainey's agreed to pay an additional $1,000.00 to compromise this particular issue. The record does not reflect that this stipulation in any way encompassed or resolved the issue of Cutno’s continued entitlement to weekly indemnity benefits or further medical treatment.

. While Cutno did initially suffer a bruise of the right hip, the record amply supports the workers' compensation judge’s implicit finding that the bruise had resolved itself.