CRAIN, J.
In this workers' compensation proceeding, Kym Hurst appeals a judgment terminating her indemnity and medical benefits. We affirm.
FACTS AND PROCEDURAL HISTORY
On January 6, 2010, Hurst, a physical therapy assistant, injured her back while assisting a patient. Before the accident, Hurst was diagnosed with degenerative disc disease and treated for low back pain on numerous occasions, including in 1999 after an automobile accident, in 2005 when injured while assisting another patient, and ongoing treatment in 2007, 2008, and 2009.
Following the 2010 work accident, Hurst filed this proceeding seeking workers' compensation benefits from her employer, Cirrus Allied, and its insurer, Ullico Insurance Company. The parties consented to a judgment awarding Hurst a lump sum of $46,192.39 for all claims for indemnity and medical benefits through December 26, 2012, inclusive of penalties and attorney fees. The judgment also ordered the defendants to pay weekly indemnity benefits effective December 27, 2012, and future medical benefits according to the Louisiana Workers' Compensation Act.
In February 2013, Ullico stopped paying indemnity benefits and, three months later, was declared insolvent. The Kentucky Insurance Guaranty Association (KIGA) assumed the claim and began paying indemnity benefits on May 5, 2014, making a lump sum payment for accrued, unpaid indemnity benefits through that date and resuming bi-weekly indemnity payments. Several events subsequently occurred that prompted Cirrus and KIGA to file a motion seeking a modification of their compensation obligations in the consent judgment.
First, on May 7, 2014, two days after KIGA resumed paying indemnity benefits, Hurst had an automobile accident. Within a week, she presented to her primary care physician and, referencing the automobile accident, complained of "significant pain in her low back." She had additional treatment through June 23, 2014. Hurst did not inform KIGA or Cirrus of the automobile accident and settled a claim arising from *1179 the accident without their knowledge or consent.
Also in early 2014, Hurst began treating with Advanced Neurosciences Institute, complaining of headaches, cognitive impairment, sensory disturbance, muscle cramps, imbalance, and gait impairment. On July 1, 2014, after numerous tests, she was diagnosed with multiple sclerosis (MS) and began treatment.
Finally, on October 13, 2014, Hurst experienced an episode of "severe lower back" pain after bending over and feeling a "pop" in her back. The severity of the pain was immobilizing, and she was transported by ambulance to a local hospital and admitted overnight for treatment. According to the EMS records, Hurst reported she "never had an injury like this in the past." An MRI showed arthritic changes and bulging discs, but no herniations.
Based on the foregoing, Cirrus and KIGA filed a motion, later amended, seeking to terminate their obligation to pay indemnity and medical benefits because Hurst (1) is no longer disabled as a result of the January 6, 2010 accident; (2) forfeited her benefits under Louisiana Revised Statute 23:1208 by receiving indemnity benefits without seeking medical treatment and failing to comply with treatment recommendations; and (3) forfeited future benefits under Louisiana Revised Statute 23:1102 by settling her 2014 automobile accident claim without the consent of Cirrus or KIGA. In response, Hurst denied the allegations in the motion and filed a reconventional demand alleging she is totally and permanently disabled due to her MS, which is causally related to the work accident.[1]
A trial was held on October 26, 2016. Cirrus and KIGA presented testimony from Hurst and introduced numerous exhibits, including volumes of medical records and the deposition of Dr. Samuel Hunter, a neurologist who treated Hurst for MS. Hurst submitted many of the same exhibits in support of her reconventional demand.
The medical records confirm that immediately after the 2010 work accident, Hurst complained of pain across her low back and hip. An MRI showed mild degenerative changes, and Hurst continued to treat for back pain, related by history to the work accident, through 2013. Beginning in 2014, the relationship between Hurst's back pain and symptoms and the 2010 work accident becomes less clear. At her first visit at Dr. Hunter's clinic on February 28, 2014, she mentioned the 2010 work accident but said the injury "resolved with physical therapy." Then, on April 24, 2014, shortly before the automobile accident, a note by Hurst's primary care physician, Dr. Aribbe Martin, reflects complaints of "chronic pain issues with her lower back and neck."
After the automobile accident, Hurst presented to Dr. Martin and complained of "significant pain" in her lower back. By June 23, 2014, she reported that "[a]ll of her pain issues she was having related to the car accident ... are better." At that time, Dr. Martin's diagnosis was hyperlipidemia (high cholesterol), probable MS, and chronic constipation. Hurst was neither diagnosed nor treated relative to her back at the June 23, 2014 visit. She continued to treat with Dr. Martin for a variety of complaints, including headaches, constipation, hypertension, and neck pain; however, other than two occasions when Hurst's "pain issues" were noted to be "stable," Dr. Martin's records reflect no *1180 treatment for back pain after the visits related to the 2014 automobile accident.
At trial, Hurst confirmed she has not requested payment under her workers' compensation coverage for any medical expenses incurred after May 2014. She claimed, however, her back still bothers her and, after being aggravated by the automobile accident, the pain returned to its baseline level. She also testified about stress she experienced when her workers' compensation disability benefits were suspended, first during the period before the consent judgment, and again in 2013 before KIGA assumed the claim and resumed payments.
The only medical testimony introduced at the trial was the deposition of Dr. Hunter, who had no opinion as to whether Hurst was still disabled from the 2010 work accident. Dr. Hunter's testimony was limited to the diagnosis and treatment of MS, which he described as an inflammatory disease of the central nervous system that "occurs for no clear reason." He explained the condition appears "random," and lumbar strain is not a known cause of MS. Studies on the relationship between stress and MS are mixed, but medical trials have shown that reducing stress can improve MS. However, according to Dr. Hunter, "the underlying etiology and [what] causes [MS] to get out of hand where it becomes a clinical event [is] a point of research that's ongoing and there is no solid idea."
Dr. Hunter noted in his records that Hurst said the "MS came on the setting of intense pyschosocial stressors related to a workman's compensation claim." Clarifying the note, Dr. Hunter explained in his deposition he merely documented "what the patient told me," and was "not making nor have I evaluated exactly what happened with that claim." Observing that "[l]egal matters are, in general, quite stressful," Dr. Hunter said it is "plausible" the claim process made Hurst's MS symptoms worse.
In a judgment signed February 9, 2017, the workers' compensation judge (WCJ) found Hurst's current medical condition is not causally related to the 2010 work accident. In relevant part, the judgment (1) ordered the consent judgment modified to terminate the workers' compensation benefits, and (2) dismissed with prejudice Hurst's reconventional demand seeking an award of permanent and total disability based on her MS.[2] Hurst appeals, assigning as error the WCJ's finding that the diagnosis of MS in 2014 is not causally related to the 2010 work accident and the conclusion that Hurst is not entitled to receive permanent and total disability benefits.
DISCUSSION
The two claims presented to the WCJ must be distinguished to determine the applicable law and burden of proof for each. Seeking to modify the consent judgment, Cirrus and KIGA filed a motion asserting, in relevant part, Hurst is no longer disabled as a result of the January 6, 2010 accident. It is undisputed the work-related injury giving rise to the consent judgment was Hurst's back injury. Responding to the motion, Hurst reconvened alleging she is totally and permanently disabled due to MS, which she alleged is causally related to the 2010 work accident.
The motion filed by Cirrus and KIGA is governed by Louisiana Revised Statute 23:1310.8B, which permits a WCJ, upon motion of a party, to modify or terminate a previous compensation award "on *1181 the ground of a change in conditions." The party moving for a modification of a previous compensation award must prove the change in condition by a preponderance of the evidence. See Guy Hopkins Construction Co. v. Poole , 13-2072 (La. App. 1 Cir. 6/6/14), 148 So.3d 14, 16, writ denied , 14-1371 (La. 10/3/14), 149 So.3d 798. A WCJ's conclusion that a claimant's condition has changed is a factual finding entitled to great weight and will not be disturbed unless clearly wrong. See Guy Hopkins Construction Co. , 148 So.3d at 16. Hurst does not assign error to the WCJ's conclusion that Cirrus and KIGA proved a change in her condition, namely the work-related back injury. Thus, that ruling is not subject to review in this appeal. See Rule 1-3, Uniform Rules-Courts of Appeal ; Jones v. Black , 13-1889 (La. App. 1 Cir. 5/2/14), 145 So.3d 402, 417 n.3, writ denied , 14-1116 (La. 9/19/14), 148 So.3d 954.[3]
The reconventional demand presented a separate claim. To succeed on that claim, Hurst had to prove her MS was either caused by the 2010 accident, or the accident aggravated, accelerated, or combined with the condition to produce a compensable disability. See La. R.S. 23:1031A; Namias v. Sunbelt Innovative Plastics, LLC , 15-1380 (La. App. 1 Cir. 2/24/16), 190 So.3d 745, 752-53, writ denied , 16-0482 (La. 5/2/16), 212 So.3d 1168 ; Cutno v. Gainey's Concrete Products , 06-1582 (La. App. 1 Cir. 5/4/07), 961 So.2d 486, 490. If the testimony leaves the probabilities evenly balanced, the claimant has failed to carry her burden of proof. Grant v. Assumption Parish School Board , 01-0272 (La. App. 1 Cir. 3/28/02), 813 So.2d 622, 624. The claimant's case fails if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Grant , 813 So.2d at 624.
Hurst contends the WCJ erred in finding she did not prove a causal connection between the work accident and her MS. Whether a worker has carried her burden of proof is a question of fact to be determined by the WCJ. Namias , 190 So.3d at 753. Causation is a factual finding subject to the manifest error standard of review. Bridges v. Gaten's Adventures Unlimited, L.L.C. , 14-1132 (La. App. 1 Cir. 4/2/15), 167 So.3d 992, 1002. Under the manifest error standard, the appellate court does not decide whether the factfinder was right or wrong; rather it is required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. Hayes Fund for First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC , 14-2592 (La. 12/8/15), 193 So.3d 1110, 1116.
The record establishes that the etiology of MS is unknown. Dr. Hunter explained the disease "occurs for no clear reason," and, more to the point, is not caused by a lumbar strain. When specifically asked what caused Hurst's MS, Dr. Hunter replied, "She developed multiple sclerosis for a reason that we cannot ascertain directly."
Hurst argues the evidence establishes that her MS could have been aggravated by the work accident and, more particularly, the stress associated with her workers' compensation claim, pointing to Dr. Hunter's testimony that stress is a "plausible explanation for making her problems worse." She relies on several cases finding a party's MS symptoms were aggravated *1182 by an accident. See Sprague v. Fladmo , 13-0520, 2013 WL 6506258 (La. App. 1 Cir. 12/10/13) ; Durrett v. State , 416 So.2d 562 (La. App. 1 Cir.), writs denied , 421 So.2d 247, 248, 251 (La. 1982) ; Sharbono v. Fire Safety Sales and Service , 04-265 (La. App. 3 Cir. 9/29/04), 883 So.2d 1066, writ denied , 04-2661 (La. 1/28/05), 893 So.2d 73.
The cited cases are factually distinguishable. The injured party in those cases was actively treating for MS when the accident occurred and, according to the evidence, suffered a precipitous increase or "flare-up" of MS symptoms after the accident. See Sprague , 2013 WL 6506258 at pp. 3-5 ; Durrett , 416 So.2d at 568-69 ; Sharbono , 883 So.2d at 1067-69. Here, the work accident occurred nearly four years before Hurst was diagnosed with MS. At the time of the work accident, Hurst complained of an immediate onset of low back pain, for which she had a long history of prior treatment, and received workers' compensation benefits for that injury for several years.
While Dr. Hunter testified Hurst likely had MS for several years before it was diagnosed, his testimony regarding the impact of the work accident, as distinguished from the claim process, on Hurst's condition is vague at best. Hurst told Dr. Hunter she experienced stress when her indemnity benefits were twice suspended. Consistent with that, Dr. Hunter noted a history of "pyschosocial stressors related to a workman's compensation claim. " (Emphasis added.) Even in that limited context, Dr. Hunter, who did not know what happened with the claim and was not familiar with other stressors in Hurst's life, could only opine that claim-related stress was a "plausible explanation for making her problems worse."
Hurst confirmed that as of the trial date she had experienced no issues with payment of her disability indemnity for nearly two and one-half years. The last time Dr. Hunter examined Hurst was May 8, 2015, over one year before the trial. Regardless of any stress associated with the claim process, Hurst had the burden of proving her MS was caused or aggravated by the work accident , not the work accident claim. See La. R.S. 23:1031A; Namias , 190 So.3d at 752 ; Cutno , 961 So.2d at 490. Given the paucity of evidence relating her current symptoms to the work accident, there is no manifest error in the WCJ's conclusion that Hurst failed to meet her burden of proof. Hurst's sole assignment of error is without merit.
CONCLUSION
The February 9, 2017 judgment is affirmed. All costs of this appeal are assessed to Kym Hurst.
AFFIRMED.

The record on appeal does not contain the reconventional demand filed on behalf of Hurst; however, at trial, counsel for both parties acknowledged the filing of the reconventional demand, and Hurst's counsel articulated the claim on the record at that time.

The judgment also dismissed Cirrus and KIGA's claims seeking relief under Sections 23:1208 and 23:1102. That portion of the judgment was not appealed.

Given the evidence in the record, particularly the intervening accidents and the lack of documented complaints of back pain or related medical treatment in recent years, we further find the interests of justice do not clearly require review of the ruling. See Rule 1-3, Uniform Rules-Courts of Appeal ; Jones , 145 So.3d at 417 n.3.